FILED 2025 MAR 12 PM 2:39 CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO.** 2025 - 02421 **SECTION** SECTION 14 **DIVISION** F

**SERGIO MORRIS**

**VERSUS**

**THE GOODYEAR TIRE & RUBBER COMPANY, et al.**

FILED: ____________________________ ______________________ DEPUTY CLERK

JURY

**PETITION FOR DAMAGES**

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, STATE OF LOUISIANA, AND THE JUDGES THEREOF:

1. Made Petitioners herein are:

**SERGIO MORRIS,** an adult resident of the State of Louisiana and domiciled in Jefferson Parish.

2. Made Defendants herein are:

A. **PREMISE OWNER/EMPLOYER**

1. **THE GOODYEAR TIRE & RUBBER COMPANY (f/k/a and successor in interest to Kelly Springfield)**
This defendant is being sued for negligence/premise/strict liability/employer liability.

B. **SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

2. **EAGLE, INC. (f/k/a Eagle Asbestos & Packing Co., Inc.)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

3. **TAYLOR-SEIDENBACH, INC.**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

4. **UNION CARBIDE CORPORATION**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

5. **HONEYWELL INTERNATIONAL, INC. (individually and as successor in interest to Allied-Signal, Inc. and The Bendix Corporation)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

6. **RED RIVER TALC LLC**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor / talc defendant.

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
Receipt Date 3/12/2025 3:31:00 PM
Receipt Number 996837
Cashier cdickerson
Case Number 2025-02421
Over Payment $0.00
Payment / Transaction List
Judicial College $0.50 $0.50 $0.00
Building Fund Fee
Request for Trial by Jury $780.00 $780.00 $0.00

EXHIBIT A

VERIFIED 3/20/2025

7. **FORD MOTOR COMPANY**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

8. **SENTRY INSURANCE COMPANY (as insurer for Reilly-Benton Company)**
This defendant is being sued as a supplier/ manufacturer/ seller/ contractor defendant.

3. Sergio Morris was diagnosed with mesothelioma on or about January 29, 2025, which was caused by and a consequence of his exposure to asbestos as set forth herein. As a direct and proximate result of the delictual conduct of the defendants, Plaintiff, Sergio Morris, has recently contracted mesothelioma and has suffered physically, financially, mentally, and emotionally.

4. The defendants, Eagle, Inc. and Taylor-Seidenbach, Inc., are domestic corporations with their registered offices located in Orleans Parish. Plaintiff was exposed to products distributed and installed by the above-referenced defendants at or from the work sites in Paragraph 2. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

5. Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because the Defendants Eagle, Inc. and Taylor-Seidenbach are domestic corporations licensed to do business in this State and has designated as its primary business office and/or primary place of business in Louisiana as Orleans Parish.

6. Orleans Parish is a proper venue for this matter pursuant to La. Stat. Ann. §22:1269B(1) because events, accident or injury occurred or in Orleans Parish. Orleans Parish is a proper venue for this matter pursuant to La. C. Civ. Proc. Art. 74 because Orleans Parish is where wrongful conduct occurred or where the damages were sustained.

7. The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

8. Sergio Morris was exposed to injurious levels of asbestos through his employment at Kelly Springfield as a manager at the tire and mechanic shop on Carrolton Avenue in New Orleans from approximately 1969-1974. This includes asbestos brakes and clutches manufactured by Ford and Bendix. Additionally, he was exposed to asbestos emissions from Avondale Shipyard from 1965 to 1979 while living at [redacted], Louisiana, directly across from the Avondale Shipyard where he continues to reside. He was also exposed to asbestos from the use of Johnson & Johnson talcum powder while caring for his daughter. Sergio Morris suffered direct exposures to

asbestos-containing products, as well as bystander exposures to asbestos-containing products when working in close proximity to other employees and/or contractors manipulating asbestos-containing products which created dust that Petitioner was exposed to.

9. In connection with the Plaintiffs' work at the sites identified in Paragraph 8, Plaintiff suffered direct by-stander and para-occupational/take home exposures to asbestos and asbestos-containing products designed, manufactured, sold, supplied, installed, used and/or maintained at these sites by the Defendants, including but not limited to the supplier/manufacturer/seller/contractor defendants.

10. Before and during Serio Morris's exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 8 and/or Paragraph 9 from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

11. When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

12. Each of the Defendants knew or should have known, through industry and medical studies the existence of which was unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff and the general public about these dangers, the Defendants ignored or concealed such information, or condoned such concealment, in order to sell or use asbestos or asbestos-containing products and avoid litigation by those who were injured from asbestos inhalation.

13. As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos as described above, Sergio Morris contracted mesothelioma. Mr. Morris was diagnosed with mesothelioma on or about January 29, 2025. A cause of Mr. Morris's contraction of mesothelioma was his asbestos exposure.

14. Because of the latency period between exposure to asbestos and the onset of mesothelioma and because of the concealment by some defendants of the causes and effects of exposure to asbestos, Plaintiff did not know, nor could he have reasonably known, that his injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the

instant Petition for Damages. Further, Plaintiff only recently discovered his injuries, not more than one year preceding the filing of this Original Petition for Damages.

15. In connection with his work at the aforementioned job sites, Sergio Morris was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## GENERAL NEGLIGENCE ALLEGATIONS

16. On information and belief, all of the Defendants identified in Paragraph 2 above were responsible to provide Plaintiff with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff with safe premises in order to protect life health, safety, and welfare of Plaintiff, and had the following responsibilities:

A. Inspection, approval, and supervision of these various premises for hazards and vices that may present a hazard to Plaintiff;

B. To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C. To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D. To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E. To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F. To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G. To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which he was required to be present;

H. To make certain that Plaintiff was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I. To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

17. Not only did Defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff was required to enter, and work, which was damaging and dangerous to Plaintiff, and each knew or should have known of the dangers to Plaintiffs health posed by working in an atmosphere polluted with asbestos dust without proper protection or warnings. Plaintiff alleges that these defendants knew or should have known that the mesothelioma sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

18. On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Plaintiff with safe premises and operations in the following particulars:

A. Failing to properly ventilate the area in which Plaintiff was required to enter in connection with his work;

B. Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Plaintiff;

C. Failure to institute safety procedures and plans for the adequate protection of Plaintiff;

D. Failing to warn Plaintiff of the dangers posed by the polluted atmosphere in which he was required to work, including but not limited to, the risk of asbestosis, pleural disease, lung cancer, esophageal cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons with pre-existing smoking habits from the handling and use of asbestos;

E. Failing to enforce applicable safety rules after such rules were actually adopted;

F. Failing to keep abreast of the scientific and engineering knowledge regarding the

dangers of, and protection against, the occupational exposure to asbestos;

G. Failing to properly supervise operations;

H. Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations cause Plaintiff to be exposed to asbestos dust, without protections;

I. Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

J. Failing to measure the levels of asbestos dust in the premises working environment.

19. The negligence of these defendants was a substantial factor and contributed in causing damages to Plaintiff.

**STRICT LIABILITY AND NEGLIGENCE OF CERTAIN EMPLOYER AND EMPLOYERS' EXECUTIVE OFFICERS AND DIRECTOR DEFENDANTS**

20. Pursuant to La. Civil Code Article 2317, Plaintiff alleges a claim for strict liability and negligence against certain Employer Defendants. Plaintiff alleges strict premise liability against these Defendants for failing to provide Plaintiff with a safe place in which to work free from hazards of asbestos, which failure was a proximate cause of the Plaintiff's injuries.

21. The premises within which the Plaintiff worked and was exposed to asbestos, were owned by and in the custody of these certain Employer Defendants and were unreasonably dangerous due to presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of the Plaintiff's injuries set forth herein.

22. These employer/premise Defendants negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge its duties to the Plaintiff in the following particulars.

A. Failure to provide Plaintiff with a safe place to work;

B. Failure to provide the Plaintiff with adequate engineering or industrial hygiene measures to control the level of exposures to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the

ambient air, medical monitoring air monitoring, and procedures to prevent the Plaintiff from being exposed to and breathing asbestos; and

C. Failure to inform or warn the Plaintiff of the hazards of asbestos exposure.

These specific acts of fault were a substantial contributing factor of the Plaintiff's injuries.

23. Kelly Springfield delegated to the executive officers and directors the responsibility to provide Plaintiff with proper supervision, safety instruction, warnings concerning dangers or hazards in the workplace, and generally to provide Plaintiff a safe workplace and to protect Plaintiff's life, health, safety and welfare while employed by the Defendant employers. Plaintiff alleges that the executive officers and directors had the following responsibilities delegated to them by Plaintiff's employer or actually undertook to perform the following duties:

a. inspection, approval and supervision of the work of Plaintiff and his co-employees;

b. to see that proper safety rules were adopted, promulgated, and enforced concerning the use of respiratory protection devices;

c. to see that Plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe and workmanlike manner;

d. to see that Plaintiff and his co-employees used safe and sound principals and practices in their work;

e. to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

f. to keep abreast of state of the art knowledge as it pertains to the dangers of asbestos inhalation;

g. to provide adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment which Plaintiff was required to work;

h. to make certain that employees, including Plaintiff, were provided a safe working environment free from asbestos dust inhalation;

i. to comply with applicable State and Federal regulations regulating workplace exposure to asbestos, including but not limited to those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healey Act and the Occupational Safety and Health Act; and

j. to provide Plaintiff with a safe place to work.

**NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS**

24. The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff's job site(s) where he was exposed to them.

25. The products manufactured, distributed, supplied, sold and/or used by these defendants were defective, and unreasonably dangerous per se to Plaintiff who was an intended and foreseeable users and bystanders that were exposed to these products. These defects include, without limitation, the following:

A. The manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B. Manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them such as Plaintiff;

C. Lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D. Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E. Failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F. Failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

G. Failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

H. Failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

I. Defects in the composition and construction of these products;

J. Failure to recall these products manufactured, sold and supplied;

K. Failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

L. Over-warranting the safety of these products.

26. Defendants are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code, that have caused harm to Plaintiff.

27. The defective conditions of Defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

28. Plaintiff also alleges that each and every one of the foregoing Defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

**STRICT LIABILITY AND NEGLIGENCE OF PREMISE OWNERS**

29. Defendants identified as premise owners in Paragraph 2A above, are liable for Plaintiff's injuries caused by their fault, in the form of strict liability and/or negligence as detailed herein, and in failing to provide Plaintiff with a safe place in which to work free from hazards of asbestos, which failure was a proximate cause of the Plaintiff's injuries.

30. The premises within which the Plaintiff worked and were exposed to asbestos, were owned by and in the custody of these premise owner defendants and were unreasonably dangerous due to presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of the Plaintiff's injuries set forth herein.

31. These Defendants are liable to the Plaintiff for the damages described in this Petition for the damages described in this Petition for the following acts of negligence while Plaintiff was working within their respective work sites:

A. Failing to provide respiratory protection to the Plaintiff;

B. Failing to provide safety equipment to the Plaintiff;

C. Failure to provide general ventilation in Plaintiff's work area(s);

D. Failing to provide local exhaust in Plaintiff's work area(s);

E. Failing to provide air free from airborne asbestos fibers in Plaintiff's work area(s);

F. Failing to provide proper Plaintiff with proper medical monitoring;

G. Failing to educate Plaintiff of the hazards of asbestos;

H. Failing to post warning or caution signs regarding the hazards of asbestos;

I. Failing to implement wet methods to control the level of airborne asbestos fibers in Plaintiff's work area(s);

J. Failing to implement the use of asbestos-free materials;

K. Inducing Plaintiff to work in areas polluted with respirable asbestos fibers.

32. As a direct result of the aforementioned acts, Sergio Morris inhaled and otherwise ingested asbestos fibers from the asbestos and asbestos-containing products present within his work sites listed in Paragraph 8, and as a direct result, Plaintiff suffered injuries complained herein.

33. During the course of the Plaintiff's work, Plaintiff was exposed to asbestos and/or asbestos containing products, which were in the care, control and custody of these defendants. Because of the extreme hazard it poses to humans, asbestos constitutes a defect or vice in the products to which Plaintiff was exposed, which defect or vice was a cause in fact of Plaintiff's injuries described herein. Accordingly, these defendants are strictly liable to Petitioner in accordance with Louisiana Civil Code article 2315 and 2317.

34. During the course of the Plaintiff's work, Plaintiff was exposed to asbestos released from theses premises, which release was a cause in fact of Plaintiffs injuries described herein. Accordingly, these defendants are strictly liable to Plaintiff in accordance with, but not limited to, Louisiana Civil Code article 2315, former Louisiana Civil Code articles 660 and 669, and *Langlois v. Allied Chemical Corp*, 249 So.2d 133 (La. 1971).

35. These defendants knew or should have known that asbestos posed a hazard to humans and that there were specific engineering and industrial hygiene controls that could help reduce the levels

of airborne asbestos fibers, nonetheless failed or suppressed, through silence, neglect or inaction, the truth regarding asbestos to Plaintiff so as to obtain an unjust advantage for themselves over and at expense of Plaintiff or to cause loss or inconvenience to Plaintiff. This action or inaction by the defendants was a direct and proximate cause of the damages described herein.

**TALC SUPPLIERS/DISTRIBUTORS/MANUFACTURERS/SELLERS**
**(Applies only to the Talc Defendants)**

36. Plaintiff repeats and reiterates the prior allegations of this complaint as if alleged more fully below:

37. For all pertinent times, Red River Talc, LLC f/k/a Johnson and Johnson (hereinafter "the Talc Defendants") purchased, sold, and distributed PRODUCTS, which Plaintiff Sergio Morris purchased, used and personally applied, causing his injuries and illnesses.

38. At all pertinent times, Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

39. At all pertinent times, Johnson & Johnson and Red River Talc, LLC; were not providing and still has not provided warnings to consumers of the PRODUCTS of the risk of cancers, including mesothelioma, posed by talc contained therein.

40. Johnson & Johnson,; Red River Talc, LLC; are liable to Plaintiff Sergio Morris as professional vendors of these PRODUCTS, and as such, because of the Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

41. Red River Talc, LLC; unsafely marketed their talcum products as uniquely safe and non-carcinogenic, at times when Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of Defendants' misrepresentations, customers, and ultimate users of the products (users, including Plaintiff Sergio Morris and his immediate family members) were deceived as to the true nature and extent of the health hazards posed by Defendants' PRODUCTS.

42. Red River Talc, LLC; are liable to Plaintiff Sergio Morris for the suffering and injuries from a disease, namely, mesothelioma, caused by his foreseeable use of the Defendants' talcum products, because the Talc Defendants' fraudulent misrepresentations were detrimentally relied upon by Plaintiff Sergio Morris who was exposed to their talcum products.

43. Finally, Red River Talc, LLC; are liable to Plaintiff Sergio Morris because they knew or should have known that the talcum products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff Sergio Morris's injuries including, but not limited to, mesothelioma, and other ill health effects.

**PRE-LOUISIANA PRODUCT LIABILITY ACT PROFESSIONAL VENDOR CLAIM**
**(Applies only to the Talc Defendants)**

44. For all pertinent times, the Talc Defendants (Johnson & Johnson; Johnson & Johnson Consumer Companies, Inc.; and Red River Talc, LLC) purchased, sold, and distributed the PRODUCTS, which Plaintiff Sergio Morris purchased, used and daily, frequently, and personally applied to his daughter which caused his injuries and illnesses from approximately the 1960-1975.

45. At all pertinent times, the Talc Defendants had a duty to exercise reasonable care to consumers, including Plaintiff herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

46. At all pertinent times the Talc Defendants knew or should have known that the perineal use of the PRODUCTS significantly increases the risk of mesothelioma.

47. As a direct and proximate result of the Talc Defendants' negligence, Plaintiff, Sergio Morris, purchased, used, and personally, frequently and regularly applied the PRODUCTS to his daughter which caused his asbestos cancer—mesothelioma; Plaintiff was caused to incur medical bills, lost wages, conscious pain and suffering, mental anguish, and other damages.

48. The Talc Defendants are liable to Sergio Morris as a professional vendor of the PRODUCTS, and as such, because of the Talc Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the PRODUCTS they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said PRODUCTS. In the past the Talc Defendants have had numerous locations across the state of Louisiana.

49. Further, the Talc Defendants knew the specific use for which the PRODUCTS would be used and had unique expertise into the physical and chemical properties of the PRODUCTS and their health hazards. The Talc Defendants unsafely marketed the PRODUCTS as uniquely safe and non-carcinogenic, at times when the Talc Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of the Talc Defendants' misrepresentations, customers and ultimate users of the PRODUCTS (users, including Plaintiff

Sergio Morris) were deceived as to the true nature and extent of the health hazards posed by the PRODUCTS.

50. The Talc Defendants are liable to Plaintiff Sergio Morris for the suffering and injuries from a disease, namely, mesothelioma, caused by his foreseeable use of the PRODUCTS, because the Defendant's fraudulent misrepresentations were detrimentally relied upon by Sergio Morris who was exposed to the PRODUCTS while caring for his daughter.

51. Finally, the Talc Defendants are liable to Plaintiff Sergio Morris because they knew or should have known that the PRODUCTS, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of Plaintiff Sergio Morris's injuries including, but not limited to, mesothelioma, and other ill health effects.

**INSURANCE ALLEGATIONS**

52. Plaintiff avers that Sentry Insurance Company issued policies of insurance to Reilly-Benton Company that provided coverage for the causes of action asserted by Plaintiff. As such, Sentry Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Reilly-Benton individually, jointly and *in solido.*

**DAMAGES**

53. The conduct of all Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from mesothelioma and of Plaintiff, Sergio Morris and of the following general and special damages including:

A. The conscious physical pain and suffering and mental anguish sustained by Petitioner (past, present and future);

B. The disfigurement suffered by Petitioner;

C. The physical impairment suffered by Petitioner (past, present and future);

D. Reasonable and necessary medical expenses incurred by Petitioner;

E. All past, present and future lost earnings and loss of earning capacity;

F. Loss of quality of life;

G. All forms of relief or categories of damages allowed by Louisiana law for wrongful death claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

54. Plaintiff demands trial by jury on all issues.

**WHEREFORE,** Petitioner demands judgment against the Defendants, and each of them, jointly, severally and/or *in solido* for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show themselves justly entitled.

Respectfully submitted,

**BOLING LAW FIRM, LLC**

Jeremiah Boling (Bar No. 34249)
Caroline Boling (Bar No. 34494)
Adam Whitworth (Bar No. 34149)
Stephanie Frederick (Bar No. 36462)
Alaina Brandhurst (Bar No. 35057)
541 Julia Street, Suite 300
New Orleans, LA 70130
Telephone: (504) 569-5904
Fax: (504) 569-5774
jboling@bolingfirm.com
cboling@bolingfirm.com
awhitworth@bolingfirm.com
sfrederick@bolingfirm.com
abrandhurst@bolingfirm.com
**ATTORNEYS FOR PLAINTIFF**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFFS' PETITION FOR DAMAGES:**

**THE GOODYEAR TIRE & RUBBER COMPANY (F/K/A KELLY SPRINGFIELD)**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801

**JOHNSON & JOHNSON CONSUMER COMPANIES, INC.** **LONG ARM SERVICE**
Through its agent for service,
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**JOHNSON & JOHNSON** **LONG ARM SERVICE**
Through its agent for service,
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**RED RIVER TALC LLC** **LONG ARM SERVICE**
Through its agent for service,
Steven M. Rosenberg
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

**SENTRY INSURANCE COMPANY (AS INSURER OF REILLY BENTON)**
Through its agent for service,
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**EAGLE, INC. (F/K/A EAGLE ASBESTOS & PACKING CO., INC.)**
Through its agent for service,
Susan B. Kohn
1100 Poydras Street, 30th Floor
New Orleans, LA 70163

**UNION CARBIDE CORPORATION**
Through its agent for service,
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**HONEYWELL INTERNATIONAL, INC. (individually and as successor in interest to Allied-Signal, Inc. and The Bendix Corporation)**
Through its agent for service,
Corporation Service Company
450 Laurel Street, 8th Floor
Baton Rouge, LA 70801

**TAYLOR SEIDENBACH, INC.**
Through its agent for service,
Hal Shepard
731 South Scott Street
New Orleans, LA 70119

**FORD MOTOR COMPANY**
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816