UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SERGIO MORRIS | CIVIL ACTION |
| VERSUS | NO. 25-2006 |
| THE GOODYEAR TIRE & RUBBER COMPANY, *et al.* | SECTION M (2) |

### ORDER & REASONS

Before the Court is an emergency motion to remand filed by plaintiff Sergio Morris.[1] Defendant, The Goodyear Tire & Rubber Company ("Goodyear"), responds in opposition,[2] and Morris replies in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion and remands this matter to the Civil District Court, Parish of Orleans, State of Louisiana, because Goodyear has not shown that Taylor-Seidenbach, Inc. ("Taylor-Seidenbach") is improperly joined and because Goodyear has waived its right to remove the case. As Goodyear had no objectively reasonable basis for removing the case, Morris is also awarded attorney's fees and costs associated with his motion to remand.

**I.      BACKGROUND**

This action is before this Court for the second time. It was once remanded for want of subject-matter jurisdiction and because Goodyear's actions in state court constituted waiver of its right to remove the case. *See Morris v. Goodyear Tire & Rubber Co.*, 2025 WL 2658347, at *3-6 (E.D. La. Sep. 17, 2025). Seven days after this Court first remanded it, Goodyear again removed the action to federal court.[4]

---

[1] R. Doc. 12.
[2] R. Doc. 14.
[3] R. Doc. 15.
[4] R. Doc. 1.

The action arises out of a claim for damages by Morris for asbestos exposure said to have caused his mesothelioma.[5] Morris filed his petition for damages in state court on March 12, 2025, alleging that he was exposed to injurious levels of asbestos in three ways: through his employment at Kelly-Springfield, where he worked from 1965-1979; through emissions from Avondale Shipyard, which is located across the Mississippi River from where he resided from 1969-1974; and through the use of talcum powder while caring for his daughter.[6] The remaining defendants in the case are Goodyear, successor in interest to Kelly-Springfield; Taylor-Seidenbach; and Eagle, Inc. ("Eagle").[7] For purposes of diversity jurisdiction under 28 U.S.C. § 1332, Morris, the only plaintiff, is a citizen of Louisiana.[8] It is undisputed that Taylor-Seidenbach and Eagle are citizens of Louisiana for purposes of § 1332.[9]

Soon after institution of the action, the state court granted Morris an expedited trial date due to his age and diagnosis.[10] Morris's first trial date in state court was September 29, 2025.[11] On July 24, 2025, Goodyear deposed Morris's expert witness, Dr. Brent Staggs.[12] Pursuant to the state-court scheduling order, discovery in the matter closed the next day, July 25, 2025.[13] On July 28, 2025, at 3:41 p.m., Goodyear received the transcript of Dr. Staggs's deposition.[14] Fifty-five minutes later, at 4:36 p.m. on July 28, 2025 (which was the deadline for filing dispositive motions, pursuant to the scheduling order), Goodyear filed a motion for partial summary judgment in the

---

[5] R. Doc. 1-1 at 2.
[6] *Id.* at 1-2.
[7] R. Doc. 1 at 3-4. As a result of voluntary acts by the plaintiff, defendants Ford Motor Company, R. Doc.1-5 at 1-2, Union Carbide Corporation, R. Doc. 1-6 at 1-2, Sentry Insurance Company, R. Doc. 1-7, Honeywell International, Inc., R. Doc. 1-8, and Red River Talc, LLC, R. Docs. 1-3; 1-4 at 48-50, are no longer parties in interest to the action.
[8] R. Doc. 1-1 at 1.
[9] *Id.* at 2.
[10] *Morris v. Goodyear Tire & Rubber Co.*, No. 25-1749, R. Doc. 7-1 at 1.
[11] *Id.* at 1-2.
[12] No. 25-1749, R. Doc. 1-19.
[13] No. 25-1749, R. Doc. 7-7 at 1.
[14] No. 25-1749, R. Doc. 1-26.

state court regarding strict liability.[15]  On August 14, 2025, it filed a reply memorandum in support of its motion for summary judgment.[16]  On August 15, 2025, Goodyear certified its circulation of the notice of hearing for its motion for partial summary judgment.[17]  And on August 21, 2025, it appeared at the hearing during which it argued in favor of its motion for summary judgment.[18]

On August 26, 2025, just over a month before trial was set to begin on September 29, Goodyear filed a notice of removal on the basis that Morris has no reasonable possibility of recovering from the nondiverse Taylor-Seidenbach, who thus, claimed Goodyear, was improperly joined for the purposes of defeating diversity jurisdiction under 28 U.S.C. § 1332.[19]  On August 29, 2025, just three days later, Morris filed an emergency motion to remand the case back to state court.[20]  On September 17, 2025, this Court granted Morris's motion to remand on two grounds. *See Morris*, 2025 WL 2658347.  First, this Court noted that the citizenship of the unserved defendant Eagle could not be disregarded for diversity jurisdiction purposes at that stage in the litigation.  *Id.* at *3-4.  Second, the Court held that Goodyear's acts in litigating its summary-judgment motion through to adjudication on the merits constituted a waiver of its right to remove the case.  *Id.* at *4-6.  This Court did not reach the question of whether Taylor-Seidenbach was improperly joined.  *Id.* at *7.

Following remand, the trial was reset for October 6, 2025.[21]  Eagle remains unserved.[22]  Goodyear alleges, though, that Morris has issued his trial subpoenas but did not subpoena Eagle

---

[15] No. 25-1749, R. Docs. 7-7 at 1; 12-6 at 77-99.
[16] No. 25-1749, R. Doc. 12-14 at 51-57.
[17] *Id.* at 87-88.
[18] R. Doc. 1-4 (reporting the argument and ruling on Goodyear's motion for summary judgment at pages 17-32).
[19] No. 25-1749, R. Doc. 1 at 6-21.
[20] No. 25-1749, R. Doc. 7.
[21] R. Doc. 12-14 at 24.
[22] R. Doc. 12-34 at 13.

or Taylor-Seidenbach.[23]  Further, the state court conducted a hearing on September 22, 2025, at which Morris and Goodyear argued three motions: Goodyear's motion to stay proceedings, Morris's motion to strike his jury demand, and Morris's motion to compel a corporate deposition of Goodyear.[24]  At the hearing, Morris and Goodyear also discussed potential trial dates with the court.[25]  Taylor-Seidenbach's attorney attended the hearing but did not make a formal appearance on the record or participate in the conversation about trial dates.[26]  Three days after the hearing, on September 25, 2025, Goodyear noticed its second removal of the case, claiming that diversity jurisdiction is now proper because Morris abandoned his claims against Eagle and Taylor-Seidenbach and Taylor-Seidenbach is improperly joined in any event.[27]

## II.   PENDING MOTION

In his motion to remand, Morris first argues that remand orders are "'not reviewable on appeal or otherwise.'"[28]  Morris concedes that a second removal is permitted where "subsequent pleadings or events reveal a new and different ground for removal," but he contends that Goodyear's second removal is predicated on the same grounds as his first removal.[29]  Thus, he claims, the second removal is "an attempt to get reconsideration of a prior remand order," which he says is impermissible in the Fifth Circuit.[30]  Goodyear responds that subsequent removals are permitted where subsequent events reveal new bases for removal, and it contends that its second removal is based upon events which occurred on September 22 and 25, 2025 – after it filed its first

---

[23] R. Doc. 14 at 6-7.
[24] R. Doc. 12-14 at 5-16.
[25] *Id.* at 7-10, 24.
[26] R. Doc. 12-34 at 17.
[27] R. Doc. 1 at 4-9.
[28] R. Doc. 12-34 at 7 (quoting 28 U.S.C. § 1447(d)).
[29] *Id.* at 8-9 (emphasis omitted).
[30] *Id.* at 7-8 (quote at 8).

notice of removal.[31]  Morris's reply reiterates his argument that there are no new facts which support a second removal.[32]

Second, Morris contends that Goodyear's actions which this Court found constituted waiver of the right to remove are still relevant to the present action and, thus, the removal is barred by *res judicata*.[33]  In response, Goodyear argues that this Court's first remand order was based solely on Eagle's citizenship[34] and again contends that its second removal is "based on different grounds and supported by new and different facts."[35]  In his reply, Morris argues that "Goodyear cannot unwaive its previous waiver."[36]

Third, Morris argues that the removal is untimely according to 28 U.S.C. § 1446(b).[37]  He reasons that Goodyear's claim that Taylor-Seidenbach is improperly joined is not timely because it is predicated on the same reasons Goodyear cited in its first removal – namely, the lack of evidence against Taylor-Seidenbach – of which Goodyear first received notice more than 30 days ago.[38]  Further, without conceding he has abandoned any claims, Morris posits that Goodyear's removal on abandonment grounds is untimely because "Goodyear knew of [Morris's] lack of prosecution of his case against Eagle long before August 26, 2025," over 30 days before the date Goodyear removed the case for the second time.[39]  In its opposition, Goodyear responds that its removal is timely because it removed the case once it became "unequivocally clear and certain that [Morris] had abandoned his claims against Eagle and Taylor-Seidenbach," and that

---

[31] R. Doc. 14 at 7-8.
[32] R. Doc. 15 at 2-4.
[33] R. Doc. 12-34 at 11-12.
[34] R. Doc. 14 at 15 n.11.
[35] *Id.* at 9 (emphasis omitted).
[36] R. Doc. 15 at 5.
[37] R. Doc. 12-34 at 12-14.
[38] *Id.* at 12.
[39] *Id.* at 13.

Goodyear's subjective belief prior to that moment is irrelevant.[40] In his reply, Morris argues that Goodyear has long known of the factual basis for all of the arguments it makes in its second removal.[41]

Fourth, Morris argues he has not abandoned his claims against Taylor-Seidenbach and Eagle because he made no clear, definite indication of his intent "'to abandon or discontinue the action against'" them.[42] Morris contends, specifically, that lack of service alone is insufficient to show that Goodyear has abandoned its claims against Eagle, and that his failure to subpoena Taylor-Seidenbach for trial or compel Taylor-Seidenbach to enter an appearance on the record at the pretrial hearing is due to Morris's "plan to rely upon previously given testimony of Taylor Seidenbach's presence [*i.e.*, its products' presence] at Avondale given in other cases," which requires neither a subpoena or counsel's participation.[43] In response, Goodyear submits that Morris need not have officially dismissed Eagle or Taylor-Seidenbach to have abandoned his claims against them as defendants, and that Morris's apparent "intent to proceed [to trial] without the diversity-destroying defendants" is sufficient.[44] Specifically with respect to Taylor-Seidenbach, Goodyear argues that Morris's failure to have Taylor-Seidenbach participate in proceedings even though it was in attendance strengthens Goodyear's argument for abandonment.[45] In his reply, Morris reiterates that abandonment of a claim must be clear and affirmative, and it has not occurred in this case since neither Eagle nor Taylor-Seidenbach has been dismissed or severed.[46]

---

[40] R. Doc. 14 at 9-10.
[41] R. Doc. 15 at 4-5.
[42] R. Doc. 12-34 at 15 (quoting *McLin v. Surgitex, Inc.*, 1992 WL 67801, at *2 (E.D. La. Mar. 25, 1992)).
[43] *Id.* at 17.
[44] R. Doc. 14 at 13.
[45] *Id.* at 13-14.
[46] R. Doc. 15 at 2.

Fifth, Morris argues that Taylor-Seidenbach was properly joined in the action.[47] He contends that his petition contains sufficient allegations to satisfy the Rule 12(b)(6)-like pleading standard applicable to improper joinder arguments.[48] He also contends that his historical and documentary evidence – upon which he has repeatedly indicated his intention to rely – demonstrates a reasonable basis for recovery against Taylor-Seidenbach, citing a case from this district for support.[49] Goodyear, he argues, cannot simply establish improper joinder by pointing to a lack of evidence.[50] In response, Goodyear argues that Taylor-Seidenbach is improperly joined because discovery has closed, trial is imminent, and Morris allegedly "has failed to produce a single piece of competent evidence connecting Taylor-Seidenbach to Mr. Morris's alleged exposures and has taken no meaningful steps to prepare a case against Taylor-Seidenbach for trial."[51] In his reply, Morris claims that historical evidence and an opinion from Goodyear's own expert witness show that he has a reasonable basis for recovery against Goodyear.[52]

Finally, Morris requests costs, attorneys' fees, and sanctions, arguing that Goodyear lacked an objectively reasonable basis for seeking removal.[53] Goodyear does not address this argument in its opposition.

### III.   LAW & ANALYSIS

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship

---

[47] R. Doc. 12-34 at 18-24.
[48] *Id.* at 18-22.
[49] R. Doc. 12-34 at 21-22 (citing *Bourke v. Exxon Mobil Corp.*, 2016 WL 836872 (E.D. La. 2016)).
[50] *Id.* at 22-24.
[51] R. Doc. 14 at 14-15 (quote at 15).
[52] *Id.* at 5-8.
[53] R. Doc. 12-34 at 24.

between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

### A. Abandonment of Claims Against Eagle and Taylor-Seidenbach

Generally, a federal court's subject-matter jurisdiction depends on "the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004). However, where a voluntary act of the plaintiff "'effectively eliminates the nondiverse defendant from the case,'" the case becomes removable on the grounds of diversity jurisdiction. *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 911 (5th Cir. 2000) (quoting *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 693 (5th Cir. 1995)). Thus, where a plaintiff has abandoned its claim against a defendant, that defendant's citizenship is not considered for purposes of diversity jurisdiction. *Id.* at 912 (holding that an intent to abandon litigation against a party effectively eliminates that party for purposes of diversity jurisdiction); *Chi., Rock Island, & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913) ("On the question of removal we have not to consider more than whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it shown as the record stood when the removal was denied."); *Bourque v. Nan Ya Plastics Corp.,* 906 F. Supp. 348, 352 (M.D. La. 1995) ("The defendants can avoid remand of the case if they can show that plaintiff has voluntarily abandoned his claims against the non diverse defendants by clear and unambiguous acts."), *aff'd*, 157 F.3d 903 (5th Cir. 1998); *see also Ramirez*

*v. Michelin N. Am., Inc.*, 2007 WL 2126635, at *3 (S.D. Tex. July 19, 2007) (collecting cases). A plaintiff's failure to serve a defendant prior to a plaintiff's declaration of readiness for trial can be considered evidence of the plaintiff's intent to abandon claims against that party. *S. Pac. Co. v. Haight*, 126 F.2d 900, 905 (9th Cir. 1942) (holding that a plaintiff's announcement of its readiness for trial without serving a resident defendant made the case removable); *Aydell v. Sterns*, 677 F. Supp. 877, 881 (M.D. La. 1988) ("Undoubtedly, plaintiff must secure service upon those parties if he is to prosecute the case against them and at some point the cause may become removable if he does not secure service.").

At this juncture, it is plain to this Court that Morris has abandoned his intent to obtain a judgment against Eagle. While it is true, as Morris argues, that a defendant's citizenship cannot be disregarded for purposes of diversity jurisdiction solely because it was not served, *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 313 n.2 (5th Cir. 2022), Morris is now prepared to go to trial in this case,[54] and he still has not served Eagle. He cannot receive a valid state-court judgment against Eagle without having served it or obtained a waiver of service. *See* La. Code Civ. Proc. art. 1201 ("Citation and service thereof are essential in all civil actions…. Without them all proceedings are absolutely null."). Moreover, he points to no evidence in the record which he plans to use against Eagle without its presence at trial. Declaring he is ready to proceed to trial without serving Eagle and without any evidence at all against Eagle indicates that Morris has no "real intention to get a … judgment" against Eagle, nor does he even have "a colorable ground" for one. *Schwyhart*, 227 U.S. at 194; *see also Haight*, 126 F.2d at 905. Thus, this Court agrees that Morris has abandoned his case against Eagle, and its citizenship cannot be considered for purposes of diversity jurisdiction.

---

[54] R. Doc. 12-14 at 7-8 (evidencing requests by Morris's counsel that trial in state court start October 6, only two weeks from September 22, the date of the request).

Morris, however, has not abandoned his claim against Taylor-Seidenbach. Goodyear's argument for abandonment rests on Morris's failure to subpoena Taylor-Seidenbach for trial and Taylor-Seidenbach's failure to make an appearance on the record at the September 22 hearing.[55] But Morris can point to evidence he intends to introduce against Taylor-Seidenbach at trial – namely, historical depositions – that does not require him to subpoena Taylor-Seidenbach for trial.[56] Further, the Court sees no reason Taylor-Seidenbach needed to make an official appearance at the September 22 hearing. That day, the state court heard arguments on Goodyear's motion to stay the proceedings, Morris's motion to strike the jury, and Morris's motion to compel a corporate deposition of Goodyear – motions on which Taylor-Seidenbach apparently took no position so had no need to appear.[57] And although the parties ultimately discussed a trial date at the September 22 hearing,[58] it was not Morris's responsibility to ensure Taylor-Seidenbach gave its availability for trial or otherwise consented to the trial date. As it stood before the second removal, Taylor-Seidenbach was a named defendant in the action over whom the state court had jurisdiction, against whom Morris intended to present evidence, and against whom a judgment could be awarded, even without its presence at trial. Thus, Goodyear has not shown that Morris has abandoned his claim against Taylor-Seidenbach.

### B. Improper Joinder

Removal of a case to federal court requires complete diversity. 28 U.S.C. § 1332(a). In addition to the requirement that the parties be completely diverse, § 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in

---

[55] R. Doc. 14 at 13-14.
[56] R. Doc. 12-34 at 7.
[57] R. Doc. 12-14 at 5-16.
[58] *Id.* at 7-10, 24.

10

which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2), and citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)). Where a party in question has been improperly joined, neither a lack of complete diversity nor § 1441(b)(2) will render an action non-removable. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, … the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). The defendant can demonstrate improper joinder by showing either (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant in state court. *Mumfrey*, 719 F.3d at 401. The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). "Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original). "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff has improperly

11

joined a nondiverse defendant. A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573. However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.*

Turning to the case at hand, Goodyear's argument that Taylor-Seidenbach is improperly joined is based on three grounds: (1) Morris's alleged disparate treatment of Goodyear Tire and Taylor-Seidenbach in pursuing discovery,[59] (2) Taylor-Seidenbach's alleged lack of participation in the litigation,[60] and (3) Morris's alleged lack of evidence against Taylor-Seidenbach.[61]

Goodyear's first and second contentions are unpersuasive to this Court because they are not relevant considerations in an improper joinder analysis. To determine the propriety of joinder, a court need only answer the question of "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573.

---

[59] R. Doc. 14 at 17-18.
[60] *Id.* at 16.
[61] *Id.* at 15, 17.

12

First, Goodyear contends that the alleged lack of discovery against Taylor-Seidenbach, when compared to the "relentlessly pursued claims against Goodyear," evidences that Taylor-Seidenbach is improperly joined because it shows that Morris had "the clear aim of putting on a case and recovering from Goodyear Tire alone."[62] However, the Fifth Circuit has expressly stated that, in an improper joinder inquiry, "the motive or purpose of the joinder of in-state defendants is not relevant." *Id.* at 574. Thus, even assuming Goodyear's assertions are true, Morris's alleged intentions in naming Taylor-Seidenbach are irrelevant so long as he has a reasonable basis for recovery against it. *Id.* at 573-74. Second, Goodyear's contention that Taylor-Seidenbach's failure to participate in the proceedings is evidence of improper joinder is also misplaced. Defendants are not required to take official action in a case to have a judgment entered against them. *E.g.,* Fed. R. Civ. P. 55 (permitting the entry of judgment against a defendant who has "failed to plead or otherwise defend"). Indeed, Goodyear itself acknowledges that "Taylor-Seidenbach's actions are not at issue" when arguing that its presence in the room during a court proceeding does not show that Morris did not abandon his claim against it.[63]

Thus, Goodyear's contention that Morris lacks any evidence at all against Taylor-Seidenbach is the only one which pertains to the relevant inquiry – whether Goodyear has shown that Morris has no possibility of recovery against Taylor-Seidenbach. *Smallwood*, 385 F.3d at 573. As an initial matter, Goodyear makes no explicit argument that Morris's pleadings fail to state a claim for recovery against Taylor-Seidenbach. Instead, Goodyear erroneously argues that "[t]he Fifth Circuit has made clear that the test is whether there is any reasonable possibility of recovery against the non-diverse defendant based on the developed record – not whether the

---

[62] *Id.* at 17-18.
[63] *Id.* at 13.

13

pleadings can be read to state a claim in the abstract," citing *Smallwood* for support.[64] However, because the controlling law unmistakably states that the inquiry begins with an analysis of the pleadings,[65] this Court's improper joinder discussion starts with a review of Morris's state-court petition for damages.

A determination of whether Morris's petition states a claim against Taylor-Seidenbach requires an understanding of the relevant substantive law. To prevail in an asbestos-injury case in Louisiana, a plaintiff must show that "'he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009)). Where a plaintiff is exposed to asbestos for a short time through one source, and he had a longer exposure through another source, "'it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Id.* (quoting *Rando*, 16 So. 3d at 1091). Louisiana courts have found it sufficient to defeat a motion for summary judgment that "a reasonable jury could conclude that it is more likely than not that [a plaintiff] inhaled a defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (quoting *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 1996)).

In his state-court petition for damages, Morris alleges that he "suffered direct by-stander and para-occupational/take home exposures to asbestos and asbestos-containing products" which were present at Kelly-Springfield and Avondale shipyard.[66] He alleges that Taylor-Seidenbach, among others, "designed, manufactured, sold, supplied, installed, used, and/or maintained" these asbestos-containing products.[67] And he alleges that he contracted mesothelioma as a result of

---

[64] *Id.* at 15 (emphasis omitted) (citing *Smallwood*, 385 F.3d at 573-74).
[65] *See* discussion *infra* pp. 11-12.
[66] R. Doc. 1-2 at 1-3 (quote at 3).
[67] *Id.* at 1-3 (quote at 3).

having inhaled, ingested, or otherwise been exposed to the asbestos in those products.[68] This Court finds that Morris's complaint states a plausible claim against Taylor-Seidenbach because he alleges that Taylor-Seidenbach supplied asbestos materials to Avondale shipyard, and that he inhaled asbestos fibers emitted from Avondale shipyard. *Id.* at 512-14 (reversing a grant of summary judgment because ""a reasonable jury could conclude that it is more likely than not that [a plaintiff] inhaled a defendant's asbestos fibers, even if there were only 'slight exposures.'" (quoting *Held*, 672 So. 2d at 1109)). Although he alleges exposures to asbestos from other sources, such as Kelly-Springfield, at a greater frequency or closer range, the shorter or more distant exposures cannot be excluded as a "substantial factor" in the cause of his mesothelioma just because he was exposed to other sources at higher frequencies or durations. *Id.* at 512 (quoting *Rando*, 16 So. 3d at 1091). As a result, Morris's claim against Taylor-Seidenbach survives the Rule 12(b)(6)-like inquiry for improper joinder.

The Court also has discretion to pierce the pleadings and conduct a summary inquiry "only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. In its notice of removal and its opposition to Morris's motion to remand, Goodyear points to no such facts in the record that would preclude plaintiff's recovery. Instead, it contends that the historical depositions that Morris offers in support of his claim against Taylor-Seidenbach are insufficient evidence because, in essence, they do not establish causation based on the specific facts of the case – "that Mr. Morris himself was ever exposed to a Taylor-Seidenbach product supplied to Avondale."[69] Goodyear's argument is based on a purported lack of evidence rather than "a discrete and undisputed fact that would preclude plaintiff's recovery." *Id.* at 573. By pointing solely to Morris's lack of evidence,

---

[68] *Id.* at 3.
[69] R. Doc. 14 at 18-19.

Goodyear has not met its burden on improper joinder, and this Court must resolve any doubt against removal and the exercise of subject-matter jurisdiction over Morris's claim.

Even so, there is no merit to Goodyear's claim that there is a complete lack of evidence against Taylor-Seidenbach. The parties both state that the historical corporate depositions indicate that Taylor-Seidenbach supplied asbestos-containing products to Avondale shipyard.[70] And Goodyear's own expert opines that "Morris'[s] likely exposure to amphibole asbestos while residing near the Avondale Shipyards … increased his risk of developing mesothelioma."[71] Thus, there is evidence in the record purporting to establish that Taylor-Seidenbach supplied asbestos to Avondale and that asbestos from that source may have contributed to Morris's mesothelioma. Based on the record, "'a reasonable jury could conclude that it is more likely than not that [Morris] inhaled [Taylor-Seidenbach's] asbestos fibers, even if there were only 'slight exposures.'" *Williams*, 23 F.4th at 512 (quoting *Held*, 672 So. 2d at 1109). As a result, this Court cannot conclude that "there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573.

### C. Goodyear's Second Removal and Expenses, Costs, And Attorney's Fees

After a case has been remanded, a defendant has a "right to seek subsequent removals," even on the same ground as its first removal, so long as the defendant "alleges new facts in support of the same theory of removal." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492-93 (5th Cir. 1996). "If the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata." *Id.* at 493.

In this case, Goodyear's second removal is in part predicated on a different factual basis than its first removal. In its first notice of removal, Goodyear argued only that Taylor-Seidenbach

---

[70] R. Docs. 12-34 at 7; 14 at 18.
[71] R. Doc. 12-22 at 48.

16

was improperly joined because Morris had no reasonable chance to recover against it and it was merely a nominal party.[72]  In its second notice of removal, Goodyear argues that Morris has abandoned his claims against both Taylor-Seidenbach and Eagle.[73]  And it also argues that Taylor-Seidenbach is improperly joined, in the event that this Court determined (as it has) that Morris did not abandon his claims against Taylor-Seidenbach.  It is true that this Court did not reach the issue of improper joinder in its prior remand order, but this was because the Court had already decided an issue (waiver) that Goodyear wholly disregards in its second notice of removal.  *Morris*, 2025 WL 2658347, at *7 ("Having decided Morris's motion to remand on the grounds of subject-matter jurisdiction and waiver, the Court need not consider the remaining questions raised by the parties in their briefing.").

Goodyear's actions in state court with respect to its summary-judgment motion on strict liability amounted to a waiver of its right to remove.  *Id.* at *5-6.  Goodyear took those actions after it says it learned of facts which made the case removable on the basis of any improper joinder of Taylor-Seidenbach.[74]  While Goodyear's second notice of removal arguably urges that the improper joinder of Taylor-Seidenbach is based on facts that did not exist at the time it first noticed removal (*viz.*, Morris's failure to subpoena Taylor-Seidenbach for trial or compel its participation in a state-court hearing), these are the same facts said to support Goodyear's claim of abandonment – which this Court has rejected as to Taylor-Seidenbach.  To be sure, Goodyear's opposition memorandum argues that Taylor-Seidenbach is improperly joined primarily due to Morris's lack

---

[72] No. 25-1749, R. Doc. 1 at 8-20.
[73] R. Doc. 1 at 6-9.
[74] No. 25-1749, R. Docs. 1-26 (showing Goodyear received a deposition transcript on July 28, 2025); 12-6 at 77-99 (showing that Goodyear filed a motion for partial summary judgment on the issue of strict liability on July 28, 2025, nearly an hour after receiving the deposition transcript); 12-13 at 87-88 (showing that Goodyear noticed its motion for hearing on August 15, 2025); 1-5 at 17-32 (showing that Goodyear argued its motion and received an unfavorable ruling on August 21, 2025); 1 (showing that Goodyear removed the case on August 26, 2025).

17

of evidence against Taylor-Seidenbach[75] – an argument relying on the same factual basis advanced in its first notice of removal.[76]  More to the point, nothing has changed regarding Goodyear's waiver of its right to remove the case based on improper joinder.  Goodyear waived its right of removal by invoking the state court's jurisdiction to adjudicate fully to ruling the merits of its summary judgment on strict liability.  This bell cannot be unrung – at least as regards the purported improper joinder of Taylor-Seidenbach.

Goodyear urges that waiver does not apply to its second notice of removal because this Court's prior remand order was based on the pending claim against Eagle, a nondiverse defendant that had not been formally dismissed from the case, and Goodyear cannot have waived a second removal based on the abandonment of the claim against Eagle, which only arose after the prior remand.[77]  If Goodyear's removal could be sustained solely on the basis of disregarding Eagle, its argument might have merit.  But ignoring Eagle's citizenship does not address Taylor-Seidenbach's nondiverse status.  Because the Court finds that Goodyear had no objectively reasonable basis for alleging that Morris's claims against Taylor-Seidenbach were abandoned, the only available ground for removing these claims is Taylor-Seidenbach's alleged improper joinder – the very ground which the Court held in its prior remand order that Goodyear had waived.  New facts in support of removal as to one nondiverse defendant does not allow a removing defendant to ignore the bar to removal (here, waiver) as to another nondiverse defendant.

Title 28 U.S.C. § 1447(c) gives district courts "the discretion to 'require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Thomas v. S. Farm Bureau Life Ins. Co.*, 751 F. App'x 538, 539-40 (5th Cir. 2018) (quoting 28

---

[75] R. Doc. 14 at 14-15.
[76] No. 25-1749, R. Doc. 11 at 11-19.
[77] R. Doc. 14 at 3.

U.S.C. § 1447(c)). "In general, 'courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Id.* at 540 (quoting *Martin v. Franklin Capital Grp.*, 546 U.S. 132, 141 (2005)). Courts "do not consider the motive of the removing defendant," but instead "consider objectively the merits of the defendant's case at the time of removal." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

Goodyear had no objectively reasonable basis for noticing this second removal. This Court had already held that its acts in state court amounted to a waiver of its right to remove. Thus, while Goodyear's second notice of removal raised some new factual grounds for removal, like the abandonment of the claims against Eagle (which had merit) and Taylor-Seidenbach (which had no merit), it also necessarily raised for a second time the issue of the improper joinder of Taylor-Seidenbach, which ground this Court previously held was waived. The second removal, then, was not objectively reasonable. Therefore, in an exercise of its discretion, this Court orders that Goodyear pay costs and attorney's fees to Morris in the amount of $1,000.00 for expenses he incurred in seeking remand.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Morris's emergency motion to remand (R. Doc. 12) is GRANTED, and this case is REMANDED to the Civil District Court, Parish of Orleans, State of Louisiana.

IT IS FURTHER ORDERED that Morris is awarded costs and attorney's fees in the amount of $1,000.00 as expenses he incurred in seeking remand.

New Orleans, Louisiana, this 7th day of October, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE